IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | CR. 10-00266-CB |
| | * | |
| **NATHAN ALLEN RAILEY** | * | |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Comes now the United States, by and through the United States Attorney for the Southern District of Alabama, and in response to Railey's Motion to Suppress Evidence (Doc. 73), submits that the motion is due to be summarily denied.

Railey's latest motion concerns the search warrant executed at his brother's home in August.[1] Hidden within his bombastic prose and unjustified attacks on the United States, the Mobile Police Department, and anyone remotely connected with the investigation are several issues that merit discussion, and several that do not. Specifically, Railey complains that there was no probable cause to search the residence (parts I.A. and I.B.), that there was an insufficient nexus between the crime under investigation and the place to be searched (Part I.C.), and that the warrant failed to particularly describe the place to be searched and the things to be seized. He also raises arguments concerning the chain of custody of the evidence, but these issues are easily

---

[1] There were, in fact, three search warrants executed in August as part of the investigation. The first was at Railey's brother's home, the second was for a vehicle at the property, and the third was to search the digital evidence recovered in the first search. Railey challenges only the first warrant.

1

disposed of because they are not properly the subject of a motion to suppress.

    **I.    Sufficiency of Warrant**

Railey, relying extensively on the testimony from a suppression hearing in the Mobile County District Court[2] attacks virtually every word of the search warrant and accompanying affidavit. His first complaint is that the search warrant itself lacked requisite probable cause from which the judge could have authorized a search. His claim is unavailing.

While the search warrant affidavit could hardly be described as a model of thoroughness, it did present the issuing magistrate with a sufficient basis upon which to conclude there was probable cause to issue the warrant. The Eleventh Circuit has set out the relevant standards for review of a magistrate's decision to issue a warrant:

> In attempting to ensure that search warrant affidavits comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resultant from warrants issued without probable cause, the issuing magistrate "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " Id. at 241, 103 S.Ct. at 2333 (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)). Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations. Id., 462 U.S. at 236-37, 103 S.Ct. at 2331-32 (citing United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13

---

[2] The hearing concerned Railey's motion styled as a motion to return illegally-seized property, but was, in all but name, a suppression hearing. Because Railey neglected to provide the Court with it, a complete transcript of that hearing will be filed contemporaneously with this response. Because it contains information subject to Fed. R. Crim. P. 49.1, it will be filed separately under seal.

L.Ed.2d 684 (1965)).

United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994).

Thus, "reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations," id. at 1363, which encourages police to seek warrants rather than to seize evidence without a warrant. In reviewing determinations of probable cause, the judgement of trained law enforcement officers is also entitled to due deference.

> The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions--inferences and deductions that might well elude an untrained person.
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

United States v. Cortez, 449 U.S. 411, 419 (1981).

In the instant case, the affidavit (attached) sets forth a sufficient basis for the issuing magistrate to conclude that there was probable cause to believe that evidence of a crime would be found in the place to be searched. Specifically, the affidavit includes the fact that the mother of the nine- and thirteen-year old victims had discovered a small camera built into an ink pen in the girls' bathroom. The camera had been placed inside a toothbrush holder that had been modified to accommodate the lens of the camera. Thereafter, the girls told their mother that Railey had begun molesting them several months earlier. Detective Thompson spoke with the victims, who provided the same information concerning the molestation to her. The reason the detective

sought the authority to search for electronic media storage devices and cameras is set forth in the next paragraph. The victims' mother could not find the recording device for the camera[3] and believed that Railey might have images of them. Railey was well-versed in computer use, being a software engineer, and had moved in with his brother at the location to be searched. The detective concluded by requesting that the magistrate authorize the "search and seiz[ure] of any electronic storage devices or computers located at" the home to which Railey had moved.

Railey posits that the items to be searched for and seized "had absolutely nothing to do with" the crime of first degree sexual abuse, which the detective identified as the crime under investigation. Employing exactly the kind of hypertechnical reading of the affidavit that the Supreme Court rejected in Gates, Railey returns again and again to the fact that the affidavit says that the property "was a means of committing" the offense. Railey's motion sets forth the text of the affidavit, but conveniently did not attach the actual document.[4] It is clear from the affidavit that the detective did not, as Railey absurdly alleges, claim that Railey "placed the actual computer on the child[ren] to prevent their escape while [he] allegedly subjected them to sexual contact." Doc. 73 at 6. What the detective did do was check one box on a standard search affidavit form used in Mobile County District Court. The form provides three grounds for connecting the property to the crime: that it was embezzled or stolen; that it was a means of committing a felony; or that it will be used to commit a crime, i.e., for an anticipatory search warrant. Clearly, neither the first nor the third ground applied– the detective properly selected

---

[3] The device is a two-part design with a standard ink pen on the bottom and a removable barrel on the top containing a miniature digital camera with integrated digital storage. Separating the two pieces exposes a USB connector to download the stored files.

[4] A copy of the document will be filed as an exhibit separately, under seal.

the ground connecting the property to the crime. Viewing the affidavit properly, through the common-sense, practical lens the Supreme Court requires, demonstrates that the reason for searching for electronic media storage devices, computers, and cameras was to find evidence of the sexual abuse of the victims. The fact that the victims' mother had found a miniature camera disguised inside a custom-modified toothbrush holder in their bathroom, combined with the fact that the victims had disclosed that Railey molested them and the well-established connection between molestation and child pornography[5] was more than enough for the magistrate to find that there was a fair probability that evidence of the crime could be found in the computers and cameras Railey had taken to his brother's house.

Railey's claim that he is entitled to a Franks[6] hearing is meritless. To be entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit, a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable cause. Id. at 171-72. Intentional or reckless omissions by an affiant in a search warrant affidavit will invalidate a warrant "only if inclusion of

---

[5] See Osborne v. Ohio, 495 U.S. 103, 111 (1990) ("[E]vidence suggests that pedophiles use child pornography to seduce other children into sexual activity."); United States v. Mento, 231 F.3d 912, 920 (4th Cir.2000) ("The Supreme Court has approved as narrowly tailored the banning of child pornography, including its possession, in part because of the causal link between child pornography and the sexual abuse and exploitation of children."), rev'd on other grounds, Mento v. United States, 535 U.S. 1014 (2002); S.Rep. No. 104-358, at 12-13 (1996) ("Child pornography stimulates the sexual appetites and encourages the activities of child molesters and pedophiles, who use it to feed their sexual fantasies. Law enforcement investigations have verified that pedophiles almost always collect child pornography or child erotica.").

[6] Franks v. Delaware, 438 U.S. 154 (1978).

the omitted facts would have prevented a finding of probable cause." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir.1997). Railey alleges that the detective recklessly omitted the fact that she "knew no pictures were on the pen camera", Doc. 73 at 7, and, if that information were included in the affidavit, there would be no probable cause. This is nonsense. Railey bases this allegation on an FBI interview of the victims' mother conducted months after the warrant was issued, which, of course, has no bearing on what the detective knew at the time the affidavit was signed. Furthermore, even assuming, *arguendo*, that the detective knew what was or was not on the pen camera without ever having looked at it, the idea that this fact would vitiate probable cause as to any other cameras, computers, or other digital storage media where evidence might be found is meritless. A Franks hearing is utterly unwarranted, and, in any event, Railey has a more than sufficient record on the issue for the Court to evaluate his claim on the merits and deny it.

The second attack Railey makes on the warrant is his claim that there was an insufficient nexus to search Railey's brother's home. Though the affidavit does not explicitly say so, it is clear from the context of the affidavit that the information about where Railey and his cameras and computers were came from the victims' mother. She was certainly in a position to know where Railey and his effects were, and to be familiar with Railey's brother and where he lives. In fact, though Railey tried mightily to keep the detective from saying so at the state suppression hearing, she testified that the victims' mother was the source of that information. See Transcript at 37[7], 42-44. Railey's analysis under Aguilar-Spinelli is entirely misplaced, inasmuch as the Supreme Court abandoned Aguilar-Spinelli and substituted a totality-of-the-circumstances

---

[7] The transcript with line numbers is paginated differently from the printed version attached. Citations are to the embedded, original page numbers within the transcript. Railey's citations appear to be to a third variation of the pagination.

analysis for determining probable cause in Illinois v. Gates, 462 U.S. 213 (1983) (an informant's veracity, reliability and basis of knowledge are "closely intertwined issues that may usefully illuminate the common sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place").  Under the totality of the circumstances, the issuing magistrate fairly read the affidavit as establishing probable cause that contraband or evidence of a crime could be found at Railey's brother's home, where Railey had recently moved.

The final allegation Railey makes is that the warrant failed to describe with particularity the items to be searched for and seized.  Railey is plainly meritless.  The Fourth Amendment requires that every warrant "particularly describ[e]" two things: "the place to be searched" and "the persons or things to be seized."  U.S. Const. Amend. IV;  Describing with particularity the "things to be seized" has two distinct elements. First, the warrant must describe the things to be seized with sufficiently precise language so that it tells the officers how to separate the items properly subject to seizure from irrelevant items. See Marron v. United States, 275 U.S. 192, 296 (1927).  Second, the description of the things to be seized should be limited to the scope of the probable cause established in the warrant. See In re Grand Jury Investigation Concerning Solid State Devices, Inc., 130 F.3d 853, 857 (9th Cir. 1997).  Considered together, the elements forbid agents from obtaining "general warrants" and instead require agents to conduct narrow seizures that attempt to "minimize[] unwarranted intrusions upon privacy." Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976).

In this case, the warrant did not authorize a general search.  It particularly described the location of the house, and the specific items to be seized.  Railey's suggestion that the detective

would have to identify the digital media by color, owner, operating system, or other identifiers is absurd. Railey points to no precedent for the proposition that a warrant for electronic storage devices is per se unconstutionally invalid, and there is none. On the contrary, courts routinely uphold searches for computer equipment and digital media using language very much like that in the case at bar. See, e.g., United States v. Hay, 231 F.3d 630, 634 (9th Cir. 2000) (upholding seizure of "computer hardware" in search for materials containing child pornography); United States v. Campos, 221 F.3d 1143, 1147 (10th Cir. 2000) (upholding seizure of "computer equipment which may be, or is used to visually depict child pornography"); United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) (upholding seizure of "[a]ny and all computer software and hardware, . . . computer disks, disk drives"); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997) (warrant permitting "blanket seizure" of computer equipment from defendant's apartment not insufficiently particular when there was probable cause to believe that computer would contain evidence of child pornography offenses); United States v. Henson, 848 F.2d 1374, 1382-83 (6th Cir. 1988) (permitting seizure of "computer[s], computer terminals, . . . cables, printers, discs, floppy discs, [and] tapes" that could hold evidence of the defendants' odometer-tampering scheme because such language "is directed toward items likely to provide information concerning the [defendants'] involvement in the . . . scheme and therefore did not authorize the officers to seize more than what was reasonable under the circumstances").

Railey's unnecessarily inflammatory rhetoric about officers "perus[ing] at will through every nook and cranny of [his brother]'s home that he shared with his wife and two (2) small children," Doc. 73 at 14, may reflect his ill-feelings about law enforcement, but it is legally and factually wrong. The warrant authorized a search of a specifically-identified property for specific

items.  Far from the terrifying vision of jack-booted government agents rummaging through every nook and cranny of the home in front of frightened children, the record shows that the search was limited and entirely unremarkable.  Upon arriving, officers spoke to Railey's brother and gave him a copy of the warrant.[8]  They asked him which room Railey was staying in, and his brother showed officers to the room where Railey was staying and where Railey was keeping his things.[9]  This was the only room searched.[10]  The only items seized were identified in the warrant.  Railey's claim on this ground is due to be denied.

### II.    Good Faith Exception

The Supreme Court created a "good faith" exception to the exclusionary rule in United States v. Leon, 468 U.S. 897 (1984).  Evidence obtained pursuant to an apparently valid search warrant that was later found to be defective for lack of probable cause was admissible because the officers had reasonably relied on the magistrate's determination that the warrant was supported by probable cause.  This Court is not restricted solely to the information in the affidavit, since "a reviewing court may look outside the four corners of the affidavit in determining whether an officer acted in good faith when relying upon an invalid warrant." United States v. Martin, 297 F.3d 1308, 1309 (11th Cir. 2002).

In Hudson v. Michigan, 547 U.S. 586 (2006), police violated the knock and announce rule, a rule with roots in the common law, statute, and the Fourth Amendment.  The Supreme Court ruled that the exclusionary rule did not apply.  "Suppression of evidence ..., has always

---

[8] Transcript at 46.

[9] Id. at 46-47.

[10] Id.

been our last resort, not our first impulse." There must be more than a "but for" relationship between the illegality and the seizure. Suppression does not apply where the connection is attenuated. Attenuation occurs when the relationship between the illegality and the seizure is remote, and it also "occurs when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."

In Herring v. United States, 129 S.Ct. 695 (2009), the Supreme Court found that the exclusionary rule did not apply to require suppression of drugs and a firearm found by officers in a search incident to arrest of a defendant, whom officers unlawfully arrested after receiving incorrect information from a sheriff's department warrant clerk that a warrant was outstanding for his arrest. Even though the Court assumed that the defendant was unlawfully arrested, it decided not to apply the exclusionary rule, noting "[t]he fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." Id. at 700. "We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." Id. In declining to apply the exclusionary rule on these facts, the Court explained that "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id. at 702.

The Court's rationale for this decision was tethered to several guideposts, namely: (1) "the exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence,'" id. at 700 (quoting Leon, 468 U.S. at 909); (2) "the benefits of deterrence must outweigh the costs," id. at 700; (3) "the extent to which the exclusionary rule is justified by these

10

deterrence principles varies with the culpability of the law enforcement conduct," id. at 701; (4) "the pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers," id. at 703 (quotations omitted); (5) "when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way,'" id. at 704. In footnote four of the opinion, the Court suggests that merely negligent conduct is insufficient to invoke the exclusionary rule because it provides only a marginal deterrent effect. See id. at 702 n.4. These guideposts suggest that the exclusionary rule does not apply where police conduct is based on a reasonable mistake or mere negligence, as opposed to conduct that is "deliberate, reckless, or grossly negligent." Id. at 702.

  While the United States is not suggesting that law enforcement was in any way negligent in the preparation or execution of the warrant, it is clear that officers had a good faith basis to rely upon the warrant(s) issued by the magistrate. Relying upon the entire record, including the information known to officers but not contained within the four corners of the affidavit, as set forth in detail in the state court suppression hearing, it is evident that even if the underlying affidavit was deficient, officers were justified in relying on the judge's determination that there was probable cause to issue the warrant. In this case, the officers did precisely what they were supposed to do: they prepared an affidavit, presented it to a judge, obtained a warrant, and executed the limited search authorized. Later, after seizing the devices, they applied for and obtained a second warrant to examine the digital media. Under the circumstances, there would be little, if any, deterrent in suppressing the evidence seized pursuant to a facially-valid warrant (and followed by a second facially-valid warrant) in a case involving molestation of two minor

victims and suspicion that evidence might be found in Railey's computers or other digital media. The officers were justified on relying on the warrants, and Railey's motion is due to be denied.

### III.   Chain of Custody

Railey also alleges that the evidence from the pen camera and the laptop computer are due to be suppressed based on misfeasance by the police officers in maintaining the chain of custody of the other items seized during the search warrant and his allegations of evidence tampering on items other than the pen camera and the laptop.[11]   These frivolous claims join the parade of other unsupported motions filed by this defendant accusing the United States and the FBI of tampering with his witness, hiding evidence and outrageous government conduct.  This motion, like the others, is both legal and factually incorrect.    The claims appear to be fueled by a limited forensic examiner hired by the defendant and fanned by the wild imagination of a defense attorney.[12]

 First and foremost, the defendant's claims that data was placed on the defendant's external hard drive by Detective Thompson and exculpatory videos from the pen camera were deleted by Eric Waldrep are scurrilous.  In fact, a competent analysis of the external harddrive establishes that the data on the defendant's external hard drive was modified during the period

---

[11] To the extent the United States does not intend to introduce evidence from any items seized from the search warrant aside from the laptop or the pen camera, Railey's motion as to these other items is likely moot.  Nevertheless, because of the false allegations he makes, the United States responds.

[12] The defendant's forensic examiner provided his first opinion that there were no images of child pornography located on the defendant's laptop and that nothing would alter his opinion.  Perhaps he had better luck during his second review, because he was ultimately able to locate the 600+ images.

that the defendant, not the United States, had possession of it.[13]  The drive, which the United States recently received from counsel for Railey, was accessed and data was modified on several dates including October 13, 2010, October 15, 2010, November 1, 2010 and November 19, 2010.  The drive was returned to Railey's counsel on October 1, 2010.  The expert hired by Railey received the drive from Railey's counsel on November 18.  The most basic Google search reveals that the author of the University of South Alabama documents appearing and later deleted from the external hard drive has a Facebook page with a profile picture that matches those in the hard drive images.  Even the most cursory review of these images by the defendant should jog his memory that this woman worked in the hotel he stayed at for at least a week in mid-October, and that he helped her with her computer while he was there.  It is truly shocking that the defendant would make these serious charges against a professional officer without conducting even that minimal amount of investigation, or, frankly, any concern for the truth.[14]

Similarly, the videos on the 8GB thumb drive that defendant alleges were tampered with by the United States were altered after the return of the device to defendant's counsel.  Why Railey or his counsel or anyone with access to the device would remove already-deleted videos is

---

[13] This hard drive was returned to the defendant pursuant to his motion in state court.  It was then presumably in the custody of either the defendant or his counsel until it was provided to the defendant's forensic examiner.  The defendant's attorney later advised the United States that he believed that Detective Thompson had compromised the hard drive, realized her error and deleted her mistake.  The United States advised that it wished to investigate these serious allegations and requested a copy of the hard drive or of the data.  After initially agreeing to provide the hard drive and date, the defendant balked.  The hard drive came into the custody of the United States only after a Motion to Compel was granted.

[14] The United States declines to further address the defendant's claim that the images of African Americans in various sexual poses bear a remarkable resemblance to Detective Thompson.  In fact, other than gender and race, Detective Thompson bears no resemblance to the woman in the pictures.

not clear, but the folder containing those videos was modified on October 12, 2010 at 10:59:24 p.m., well after it was returned to defendant's counsel on October 1. Railey is correct inasmuch as the device was altered between its examination by law enforcement and its submission to his expert, but his allegations that law enforcement tampered with evidence are as irresponsible as they are demonstrably false.

Railey's chain of custody argument is misplaced, because questions concerning the handling of evidence and the credibility of such witnesses are factual questions for the jury, and are not properly the subject of a pretrial suppression motion. See United States v. Chaplinski, 579 F.2d 373, 374-75 (5th Cir.1978) ("adequacy of the chain of custody was a factual question which the jury resolved against appellant(s)."); United States v. Kubiak, 704 F.2d 1545, 1552 (11th Cir. 1983) (questions concerning how and where drug evidence was kept were proper for the jury as was the credibility of all the witnesses). Railey's arguments that the United States did not establish a proper chain of custody for admission of this evidence[15] and that as a consequence, there was tampering of that evidence, go to the weight of the evidence and not its admissibility. "Challenge to the chain of custody goes to the weight rather than the admissibility of the evidence. Thus, the adequacy of the proof relating to the chain of custody is not a proper ground to challenge the admissibility of the evidence." United States v. Lopez, 758 F.2d 1517, 1521 (11th Cir. 1985) (citation omitted); see also United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir.1990); United States v. Caldwell, 776 F.2d 989, 1001-02 (11th Cir. 1985); United States v. Clark, 664 F.2d 1174, 1176 (11th Cir. 1981).

---

[15] Because Railey's counsel and expert witness possessed the evidence after it was returned by law enforcement, presumably he is suggesting they are necessary witnesses for admission of this evidence, a proposition that raises not-insignificant conflict issues.

Furthermore, Rule 12(e) of the Federal Rules of Criminal Procedure provides that a court may, for good cause, defer ruling on a pretrial motion until the time of trial. Good cause may be based on concerns for judicial economy. United States v. Beard, 761 F.2d 1477 (11th Cir. 1985). In this case, the United States intends to introduce only two items obtained from the search warrant, the pen camera and the laptop. Every access into digital evidence leaves bread crumbs - clues as to when the device was accessed, how it was accessed, and what was done when it was accessed. Thus, any hearing on the defendant's allegations would require both the United States and the defendant's experts to testify as well as both the United States and the defendant's chain of custody witnesses,[16] and would result in a lengthy hearing that would be duplicated again at the time of trial. Ultimately, this would be a waste of the Court's and the witnesses' time, as well as an invasion into the province of the jury.

**IV.    Conclusion**

Notwithstanding Railey's latest unjustified barrage of attacks on the investigators, there is no basis to suppress the evidence recovered pursuant to valid warrants, and suppression is not warranted under Leon. Railey is not entitled to a Franks hearing, because his allegation that the affiant omitted information from the warrant affidavit is speculative and irrelevant. Nor is Railey entitled to a suppression hearing since there is already a voluminous record from the state suppression hearing, where Railey had the opportunity to question the affiant under oath and explore exactly the same issues he raises here. The Court has a more than adequate basis upon which to decide the issues. Finally, Railey's demonstrably false allegations of evidence

---

[16] As some of the data was modified after it was returned to defendant's counsel, such hearings would also render his counsel such a witness.

tampering are spurious and not germane to any legitimate suppression claim.  For those reasons, his motion is due to be summarily denied.

                                Respectfully Submitted,

                                KENYEN R. BROWN
                                UNITED STATES ATTORNEY

                                By:
                                 /s/ Sean P. Costello
                                Sean P. Costello (COSTS3753)

                                /s/ Maria E. Murphy
                                Maria E. Murphy

                                Assistant United States Attorneys
                                United States Attorney's Office
                                63 South Royal Street, Suite 600
                                Mobile, Alabama 36602
                                Telephone: (251) 441-5845
                                Facsimile: (251) 441-5277

## **CERTIFICATE OF SERVICE**

     I hereby certify that on February 18, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record for defendant.

                                /s/ Sean P. Costello
                                Sean P. Costello
                                Assistant United States Attorney